**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**In re:**

**EL DORADO GAS & OIL, INC., et al.** **DEBTORS**

**EL DORADO GAS & OIL, INC., et al.** **PLAINTIFFS**

**v.** **CIVIL ACTION NO. 1:26-cv-176-HSO-BWR**

**BILL D. BUFFINGTON, et al.** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION [1] TO WITHDRAW REFERENCE WITHOUT PREJUDICE**

Defendants Bill D. Buffington, Cottonwood Recreational Land, Inc., and GS Holdings, Inc.'s Motion [1] to Withdraw Reference asks this Court to withdraw an adversary proceeding originally referred to the United States Bankruptcy Court for the Southern District of Mississippi (the "Bankruptcy Court"). *See* Mot. [1]; Mem. [1-3] at 1-11 (Memorandum in Support of Withdrawal); *see also* Uniform Miss. Bankr. R. 5011-1. Plaintiffs El Dorado Gas & Oil, Inc., also known as El Dorado Oil & Gas, Inc. ("El Dorado"), World AG Investment, Inc. ("World Ag"), and First Service Bank ("FSB") (collectively, "Plaintiffs") oppose the Motion [1], arguing that Defendants have not shown cause to withdraw the reference under 28 U.S.C § 157(d). The Motion [1] should be denied without prejudice.

I. BACKGROUND

On December 22, 2023, El Dorado filed a voluntary petition for Chapter 11

bankruptcy and Dawn M. Ragan was appointed as trustee (the "Trustee"). Resp. [6] at 7;[1] Mem. [1-3] at 2; *see generally In re El Dorado Gas & Oil, Inc.*, CM/ECF 23-51715-JAW. In February 2025, the Bankruptcy Court determined that World Ag is a wholly owned subsidiary of El Dorado and subject to the Trustee's management. *See* Resp [6] at 7. On February 14, 2026, El Dorado, through the Trustee, and World Ag filed a Complaint in the Bankruptcy Court against Defendants Bill D. Buffington, Cottonwood Recreational Land, Inc., and GS Holdings, Inc. (collectively, "Defendants"), initiating an adversary proceeding (the "Adversary Proceeding") to determine rightful ownership and possessory interests in four tracts of land located in Mississippi: the "Campsite"; the "Hunting Land"; "Cottonwood Farm"; and "Egremont Farm" (collectively, the "Properties"). *See id.* at 8; Mot. [1] at 1; *see generally In re El Dorado Gas & Oil, Inc.*, CM/ECF 26-06007-JAW.

The Complaint seeks declaratory relief regarding alleged property interests, 28 U.S.C. § 2201, *et seq.* (Count 1); to quiet title to the Properties under Mississippi law (Count 2); the avoidance of alleged property interests under 11 U.S.C. § 544(a)(3) (Count 3); turnover under 11 U.S.C. § 542 (Count 4); and damages arising from Defendants' failure to vacate the Properties (Count 5). *See* Mot. [1] at 1-2; Resp. [6] at 8. Defendants answered, raising counterclaims for adverse possession (Count I), and unjust enrichment for money spent maintaining, repairing, insuring, and expanding the Properties in justifiable reliance on their alleged ownership interest (Count II). *See* Mot. [1] at 2; Resp. [6] at 8. Defendants demanded a jury

[1] The Court will cite to the page numbers generated by CM/ECF.

trial. *See* Mot. [1] at 2; Resp. [6] at 8.

On April 21, 2026, FSB filed a complaint in intervention to protect a lien interest it holds in the Hunting Land. *See* Mot. [1] at 3; Resp. [6] at 9-10. As an intervenor plaintiff, FSB similarly seeks a declaration that World Ag is the rightful owner of the Hunting property. *See* Mot. [1] at 3; Resp. [6] at 9-10. On June 1, 2026, Defendants filed a motion in the Bankruptcy Court to withdraw the originally referred Adversary Proceeding to district court under 28 U.S.C. 157(d),[2] *see* Ex. [1-2] at 3; Mem. [1-3] at 1-11, and the Motion [1] to Withdraw Reference was transmitted to this Court on June 22, 2026, *see* Mot. [1]. Four dispositive motions remain pending in the Bankruptcy Court: two motions to dismiss Defendants' counterclaims, *see* Resp. [6] at 21; and two motions for summary judgment filed by Plaintiffs, *see In re El Dorado Gas & Oil, Inc.*, CM/ECF 26-06007-JAW, No. [69], [75].

## II. DISCUSSION

### A. Relevant Legal Authority

"By statute, district courts have original jurisdiction over bankruptcy cases." *In re KSRP, Ltd.*, 809 F.3d 263, 266 (5th Cir. 2015) (citing 28 U.S.C. §§ 157, 1334). Although bankruptcy cases are typically referred to bankruptcy court, district courts have discretionary authority to withdraw a referral and hear the case. *See* 28 U.S.C § 157(a), (d); *In re Mirant Corp.*, 197 F. App'x 285, 294 (5th Cir. 2006) (per curiam) ("[R]eference to and withdrawal from the bankruptcy court of bankruptcy

[2] Defendants do not invoke mandatory withdrawal under § 157(d), so the Court will not address that question.

matters is left to the discretion of the district court."); *Mauldin v. Oliver*, No. 3:22-CV-90-DMB-RP, 2022 WL 17742617, at *2 (N.D. Miss. Dec. 16, 2022) ("[D]istrict courts routinely refer most bankruptcy cases to the bankruptcy court."); *see also* L.U. Civ. R. 83.6; Uniform Miss. Bankr. R. 5011-1.

When evaluating whether to exercise discretionary withdrawal under § 157(d), courts consider six factors outlined in *Holland America Insurance Co. v. Succession of Roy*, 777 F.2d 992 (5th Cir. 1985):

> (1) whether the matter is core or non-core, (2) whether the matter involves a jury demand, (3) whether withdrawal would further uniformity in bankruptcy administration, (4) whether withdrawal would reduce forum-shopping and confusion, (5) whether withdrawal would foster economical use of debtors' and creditors' resources, and (6) whether withdrawal would expedite the bankruptcy process.

*In re Wattstock, LLC*, No. 3:23-CV-0270-X, 2024 WL 923004, at *1 (N.D. Tex. Mar. 4, 2024) (citing *Holland Am. Ins. Co.*, 777 F.2d at 999); *see also Schloemer v. Moyer*, No. 1:10CV566HSO-JMR, 2011 WL 4406323, at *3 (S.D. Miss. Sept. 20, 2011) (citing *Holland* and listing similar considerations). Additionally, "[t]he party seeking withdrawal of reference has the burden of establishing a 'sound articulated foundation' for permissive withdrawal." *Jones v. Walter Mortg. Co.*, No. 308CV124-SA, 2009 WL 2999195, at *2 (N.D. Miss. Sept. 16, 2009) (quoting *Holland Am. Ins. Co.*, 777 F.2d at 998).

B. <u>Analysis</u>

Defendants assert that the Adversary Proceeding should be withdrawn for essentially three reasons: (1) the claims are non-core; (2) the Bankruptcy Court lacks the constitutional authority to enter a final decision on the claims; and (3)

Defendants have demanded a jury trial. *See* Mem. [1-3] at 4-7. Defendants further believe that the other *Holland* factors support withdrawal. *Id.* at 7-9. El Dorado and World Ag respond that Defendants are not entitled to a jury trial because their claims are equitable in nature and because they waived any right to a jury by filing counterclaims in the Bankruptcy Court. *See* Resp. [6] at 13-22. El Dorado and World Ag also contend that the claims are core matters the Bankruptcy Court can fully adjudicate, and that the remaining *Holland* factors do not support withdrawal. *See id.* at 22-28.

FSB takes a similar position, but it maintains that "[t]he strongest reason to deny the Motion is timing," noting, among other things, that "discovery has not been completed, the pleadings may not be settled, threshold release and title issues have not been decided, [and] dispositive motions have not been resolved[.]" Resp. [8] at 9. In other words, even if withdrawal is ultimately proper, now is not the time to do so.

1. Core Versus Non-Core Claims

"The 'starting point' in evaluating [a] motion [to withdraw reference] is a determination of whether the proceeding is core or non-core. This is because the core versus non-core classification determines whether the bankruptcy court has adjudicatory jurisdiction (in core proceedings), or has a restricted judicial role (in non-core proceedings)." *Veldekens v. GE HFS Holdings, Inc.*, 362 B.R. 762, 767 (S.D. Tex. 2007) (internal quotation marks and citation omitted) (cleaned up). 28 U.S.C. § 157(b)(2) provides a non-exhaustive list of core proceedings, including:

> (A) matters concerning the administration of the estate;
> (B) allowance or disallowance of claims against the estate . . . ;
> * * *
> (E) orders to turn over property of the estate;
> * * *
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
> * * *
> (K) determinations of the validity, extent, or priority of liens;
> * * *
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship[.]

28 U.S.C. § 157(b)(2); *see also Stern v. Marshall*, 564 U.S. 462, 474 (2011) (citing 28 U.S.C. § 157(b)(1)-(2)).

But a claim's placement within this statutory list is not dispositive. *See Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987) (rejecting plaintiff's argument that his action was a core proceeding because it was "literally a claim against the estate, which is expressly defined as a core proceeding by section 157(b)(2)(B)"). Instead, "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case," *id.*, and courts "must look to both the form and the substance of the proceeding" in making such a determination, *id.*

Ultimately, the problem here is with the timing of the Motion [1] to Withdraw. Although "[a] motion to withdraw a case or proceeding under 28 U.S.C. §157(d) must be heard by a district judge,"[3] Fed. R. Bankr. P. 5011(a), by statute,

[3] Such a request may also come before the district court upon a report and recommendation from the bankruptcy court. *See In re VC Macon, GA, LLC*, 608 B.R. 470, 473-74 (Bankr. S.D. Miss. 2019) ("If a bankruptcy court later determines that the requested relief is beyond its authority, it may enter a recommendation for withdrawal of the reference to the district court that originally conferred jurisdiction." (quotations omitted and cleaned up)).

typically "[t]he bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection or is a proceeding that is otherwise related to a case under title 11," 28 U.S.C. § 157(b)(3); *see also Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 33 (2014) ("It is the bankruptcy court's responsibility to determine whether each claim before it is core or non-core."); *Matter of Delaware & Hudson Ry. Co.*, 122 B.R. 887, 892 (D. Del. 1991) ("[B]efore a withdrawal of reference motion is presented to the District Court, the bankruptcy judge must make the determination of whether proceedings are core or non-core."); *Rodriguez v. Countrywide Home Loans, Inc.*, 421 B.R. 341, 349-50 (S.D. Tex. 2009) ("The bankruptcy court makes the initial determination of the core status of the proceedings, however, the district court conducts a *de novo* review of the bankruptcy court's findings." (footnote omitted)).

Here, it is not clear from the record that the Bankruptcy Court has had the opportunity make a definitive determination whether the eight claims raised in the Adversary Proceeding are core or non-core, highlighting that the Motion [1] to Withdraw was filed prematurely. And some district courts have abstained from deciding this issue when presented with a motion to withdraw where the bankruptcy court had not yet addressed whether claims were core or non-core. *See In re Enron Corp.*, No. 05 CIV. 4079 (GBD), 2005 WL 1185804, at *3 (S.D.N.Y. May 18, 2005) ("[T]he Bankruptcy Court has not made any determination that the Debtors' claims objections are core or non-core. Therefore, this Court defers to the Bankruptcy Court in determining the core/non-core status issues in this case."); *In*

*re Prosser*, No. 06-30009 JFK, 2008 WL 2845662, at *4 (D.V.I. July 18, 2008) ("There is no evidence in the record that any party in this matter requested that the bankruptcy judge determine whether this is a core or a non-core proceeding. As such, to the extent the motion is predicated on an argument that the proceeding is core or non-core, the motion is also premature. (footnote omitted)); *cf. Rodriguez*, 421 B.R. at 349-52 (proceeding to categorize claims as core or non-core in a motion to withdraw reference after it noted that the bankruptcy court had already made the initial determination).

The record here appears more similar to that in *Enron* and *Prosser*, *see In re Enron Corp.*, 2005 WL 1185804, at *3; *In re Prosser*, 2008 WL 2845662, at *4, and as FSB notes, the Adversary Proceeding is still in its early stages, *see* Resp. [8] at 9. The Court will therefore defer to the Bankruptcy Court to address this question in the first instance. *See In re Enron Corp.*, 2005 WL 1185804, at *3; *In re Prosser*, 2008 WL 2845662, at *4.[4] But even if the Bankruptcy Court had already determined that the instant matters are non-core, judicial efficiency and the need for uniform bankruptcy administration weigh in favor of not withdrawing the reference at this time. *See* discussion *infra* Section II.B.3.

2. <u>Demand for a Jury Trial</u>

Ordinarily, when a party invokes their Seventh Amendment right to a jury

---

[4] Because Defendants' argument that the Bankruptcy Court cannot enter a final decision hinges on the characterization of the claims as either core or non-core, this argument is similarly premature. *See Stern*, 564 U.S. at 471 ("[B]ankruptcy courts may hear and enter final judgments in 'core proceedings' . . . . In noncore proceedings, the bankruptcy courts instead submit proposed findings of fact and conclusions of law to the district court . . . .").

trial, a court must perform a multi-step analysis to determine whether the claims at issue are legal or equitable. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989); *U.S. Bank Nat. Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 416-17 (5th Cir. 2014), *as revised* (Sept. 2, 2014). But, similar to the core versus non-core issue, the Court will decline to reach the merits of this question at this time given the early stage of the proceedings in the Bankruptcy Court. Any determination here necessitates consideration of all claims and counterclaims, *see U.S. Bank Nat. Ass'n*, 761 F.3d at 416; *In re Davis*, No. 07-33986-H3-7, 2012 WL 2871662, at *7 (S.D. Tex. July 10, 2012), *aff'd*, 538 F. App'x 440 (5th Cir. 2013), but the parties do not agree that the pleadings in the Bankruptcy Court have even yet closed, *see* Resp. [8] at 9. It is premature to consider this factor at this time.[5]

3. <u>Other *Holland* Factors</u>

The other *Holland* factors weigh against withdrawal of the reference, as doing so would not further uniformity in bankruptcy administration, decrease confusion, or foster economical uses of resources. *See In re Wattstock, LLC*, 2024 WL 923004, at *1; *Schloemer*, 2011 WL 4406323, at *3. Instead, withdrawing the reference now would lead to piecemeal litigation of an Adversary Proceeding in this Court that will substantively impact the administration of the estate in the Bankruptcy Court. There are also two motions to dismiss, two motions for summary judgment, and the issue of a 2018 mutual release still pending before the

[5] Nevertheless, the Court agrees with Plaintiffs' general proposition that filing a counterclaim in bankruptcy court often tends to waive that party's right to a jury trial. *See In re Davis*, 2012 WL 2871662, at *7; *In re Endeavour Highrise L.P.*, 425 B.R. 402, 414 (Bankr. S.D. Tex. 2010).

Bankruptcy Court for resolution. *See* Resp. [6] at 21; Resp. [8] at 16-17; *In re El Dorado Gas & Oil, Inc.*, CM/ECF 26-06007-JAW, No. [69], [75]. It would be counterproductive to pluck this case from the Bankruptcy Court and hear these matters de novo before that court is able to address them.

After years of litigation surrounding El Dorado's bankruptcy estate, the Bankruptcy Court is uniquely familiar with the claims and issues between the parties, and withdrawal could delay the bankruptcy process. *See Schott, Tr. for Est. of InforMD, LLC*, 618 B.R. at 450 ("Given the bankruptcy court's familiarity with the factual and legal issues presented in both the reference dispute and the underlying adversary proceeding, this [c]ourt finds that it would be disruptive to the uniformity of the bankruptcy administration for the suit to continue to be withdrawn."); *In re Enron Corp.*, 2005 WL 1185804, at *3 (finding that "judicial efficiency as well as the uniform administration of the bankruptcy court proceedings weigh in favor of not withdrawing the reference" where the bankruptcy court had "presided over the [debtor's] bankruptcy cases for over three years").

Accordingly, Defendants' Motion to Withdraw should be denied without prejudice. If it is later determined that the case presents matters that the Bankruptcy Court cannot adjudicate, it may enter the appropriate report and recommendation, or the parties may file another motion to withdraw the reference.

## III. CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants Bill D. Buffington, Cottonwood Recreational Land, Inc., and GS Holdings, Inc.'s Motion [1] to Withdraw Reference is **DENIED WITHOUT PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 24th day of August, 2026.

s/ Halil Suleyman Ozerden
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE